**[J-56-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 3 WAP 2025 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered June 28, |
| | : | 2024, at No. 17 WDA 2022, |
| v. | : | Affirming in Part and Vacating In |
| | : | Part the Order of the Court of |
| | : | Common Pleas of Beaver County |
| JAMIE M. BROWN, | : | entered December 15, 2021, at No. |
| | : | CP-04-CR-000913-2001, and |
| Appellant | : | remanding. |
| | : | |
| | | SUBMITTED: May 20, 2025 |

*Justice Wecht delivers the Opinion of the Court except for Section V, and announces the judgment of the Court. The Opinion is joined in full by Chief Justice Todd and Justice Donohue. Justice Brobson joins the Opinion except for Section V.*

**OPINION**

**JUSTICE WECHT**                                      **DECIDED: JANUARY 28, 2026**

On May 10, 2002, following a jury trial in Beaver County, Jamie Brown was convicted of third-degree murder for the killing of Aliquippa Police Officer James Naim. Nearly twenty years after he was sentenced for the killing, on June 4, 2021, Brown filed a petition for post-conviction relief.[1] As his petition was facially untimely, Brown attempted to satisfy the newly discovered facts exception to the PCRA's time limit.[2] As the predicate

---

[1] *See* Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46; *see id.* § 9545(b)(1) (establishing a one-year time limit to file a PCRA petition).

[2] *Id.* § 9545(b)(1)(ii) (requiring a petition to be filed within one year of the date the judgment became final unless the petitioner alleges and proves that "the facts upon which (continued…)

fact for the exception, Brown relied upon a third-party confession. The PCRA court held that evidence that another person confessed to the crime for which Brown was serving a sentence was inadmissible and, therefore, insufficient to establish the newly discovered facts exception. The Superior Court affirmed, and we granted allowance of appeal.

We now hold that a PCRA petitioner is required to establish the newly discovered facts exception with evidence that would be admissible at a PCRA hearing. We further hold that a third-party confession to another person may be admissible and may serve as a newly discovered fact under the PCRA. Brown adequately has pleaded the exception. He is entitled to attempt to prove his allegations with admissible evidence at an evidentiary hearing. We reverse the Superior Court's order to the contrary, and we remand for an evidentiary hearing as to the newly discovered facts exception.

## I. Background

On March 15, 2001, Officer Naim was on foot patrol in the Linmar Terrace Housing Plan in Aliquippa, Beaver County. He was approached from the rear and shot in the head. Brown and Acey Taylor, III, were arrested for the killing, and charged with criminal homicide. At Brown's trial, the Commonwealth introduced evidence that Brown, who was well-known to the law enforcement community, had told several individuals that he was going to kill a police officer to "set an example."[3]

Witnesses in the area observed nineteen-year-old Darnell Hines shortly after the shooting. Before police came to suspect Brown and Taylor, Hines was arrested and charged with capital murder for the shooting. Hines later provided a statement that he saw Brown shoot Officer Naim. The Commonwealth ultimately withdrew the charges

---

the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence").

[3]     *Commonwealth v. Brown*, 141 A.3d 491, 495 (Pa. Super. 2016).

against Hines. At the joint trial of Brown and Taylor, Hines testified for the Commonwealth, stating that he observed Brown commit the shooting and that he observed Taylor direct Brown to shoot Officer Naim a second time. The Commonwealth also introduced the testimony of Joseph Kirkland, who claimed to have seen Brown speeding away through Linmar Terrace. Kirkland testified that Brown told him on the night of the killing that he had put a bullet in a man's head. Taylor provided a statement to police implicating Brown. Although Taylor did not testify at trial, his statement was introduced, with references to Brown replaced with the "other guy."[4] Taylor ultimately was acquitted.

Before his death, Officer Naim had expressed to several individuals that he was concerned for his life because there were corrupt Aliquippa police officers. At trial, the Commonwealth successfully precluded admission of this evidence as inadmissible hearsay. The trial court also granted the Commonwealth's motion to preclude evidence that Anthony Tusweet Smith was the perpetrator of the killing. In particular, the trial court barred: the testimony of three individuals who had discussions with Tusweet Smith regarding Tusweet Smith's offer to pay someone approximately $20,000 to kill an Aliquippa police officer; evidence that Tusweet Smith was seen with two 9 mm handguns (the type of gun used in the killing); evidence that Tusweet Smith had indicated his intent to kill an officer; evidence that a 9 mm magazine with twenty-six rounds was discovered in a home in which Tusweet Smith regularly resided, along with a box of 9 mm ammunition

---

[4]     Notes of Testimony (N.T.), 5/2/2001, at 1190-1210. In *Bruton v. United States*, 391 U.S. 123, 135-36 (1968), the Supreme Court of the United States held that the admission of incriminating statements by a non-testifying co-defendant violated a defendant's right of cross-examination protected by the confrontation clause of the Sixth Amendment. In response, courts have approved of the practice of redacting the confessions of non-testifying co-defendants to remove references that explicitly implicate the defendant. *See., e.g., Richardson v. Marsh*, 481 U.S. 200, 208 (1987) (approving of a redaction that removed all references to the defendant).

and three rounds inside a Sega video game system; and evidence that the bullets recovered from the residence were considered a possible match for those found at the crime scene.

Hines later would assert that Aliquippa police officers demanded that he falsely implicate Brown. In 2016, Hines recanted his trial testimony. Like Hines, Taylor also subsequently recanted his statement implicating Brown.[5]

Before trial, the Commonwealth disclosed evidence that, during the initial investigation, a police dog began to track towards Tusweet Smith's grandmother's house in Linmar Terrace, and that Tusweet Smith left the Pittsburgh area and flew to Nashville, Tennessee, under a false name on the night of the shooting.[6] The Commonwealth further disclosed evidence that Tusweet Smith made a confession to inmate Richard DeSabetino in the Beaver County Jail. After trial, Brown learned that Tusweet Smith made a separate confession to inmate Steve Zambory, in the Beaver County Jail.[7]

On May 29, 2002, following trial, the trial court sentenced Brown to twenty to forty years of incarceration. Brown appealed to the Superior Court, which affirmed the judgment of sentence.[8] On December 3, 2004, this Court denied Brown's petition for allowance of appeal.[9] On June 30, 2005, Brown filed a timely, first PCRA petition. On February 13, 2008, the PCRA court dismissed that petition. The Superior Court

---

[5] *See* Post-Remand Amended PCRA petition, 4/28/2017, Attachment C.

[6] *See* PCRA Ct. Op., 10/16/2017, at 2, 3.

[7] *Id.; see also* Supplement to Amended PCRA petition, 9/21/2017, at 6.

[8] *Commonwealth v. Brown*, 850 A.2d 5 (Pa. Super. 2004) (table).

[9] *Commonwealth v. Brown*, 863 A.2d 1142 (Pa. 2004) (*per curiam*).

affirmed,[10] and this Court denied allowance of appeal.[11]  Brown unsuccessfully sought *habeas corpus* relief in federal court.[12]  On July 12, 2012, at the conclusion of federal litigation, Brown filed a *pro se* PCRA petition, his second.  The PCRA court denied relief.  The Superior Court once again affirmed.[13]

On June 7, 2013, Brown filed a third PCRA petition, which he followed with an amended petition.  He premised the timeliness of the amended petition upon two facts.  The first was a notarized letter from Angela White.  White had been prosecuted in an unrelated matter, and the Commonwealth introduced wiretap evidence against her.  In her affidavit, White alerted Brown to the existence of an audio recording on which an individual believed to be Tusweet Smith could be heard admitting to and bragging about Officer Naim's murder.  After receiving the affidavit, Brown obtained the transcripts of White's trial, which revealed that several wiretap interceptions were made by the Pennsylvania Attorney General's Office and used to prosecute White.  These wiretap interceptions included dialogue between several individuals and their exculpatory discussion of the shooting of Officer Naim.  Brown obtained the White affidavit on April 22, 2013.  Brown asserted that this new and withheld evidence implicated Tusweet Smith in the murder of Officer Naim.

The second fact was premised upon a declaration from Anthony Brown, dated August 17, 2013, and received by Brown on or around September 9, 2013.  In the declaration, Anthony Brown describes a conversation he heard three days after the

---

[10]     *Commonwealth v. Brown*, 965 A.2d 289 (Pa. Super. 2008) (table).

[11]     *Commonwealth v. Brown*, 983 A.2d 725 (Pa. 2009) (*per curiam*).

[12]     *Brown v. Mazurkiewicz*, 2012 WL 954628 (W.D.Pa. Mar. 20, 2012) (memorandum order).

[13]     *Commonwealth v. Brown*, 1256 WDA 2012, 2013 WL 11256429 (Pa. Super. Aug. 9, 2013) (non-precedential).

murder of Officer Naim among several Aliquippa police officers in which the officers implicated themselves in the murder of Officer Naim and in framing Brown for the shooting.[14]

Brown's third petition was facially untimely. A PCRA petition is timely if it is "filed within one year of the date the judgment [of sentence] becomes final."[15] "[A] judgment [of sentence] becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."[16] Brown's judgment of sentence became final on March 3, 2005, ninety days after this Court denied allowance of appeal.[17] To be considered timely, a PCRA petition filed beyond the one-year time limit must meet at least one of three exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.[18]

---

[14]     *See Brown*, 141 A.3d at 501.

[15]     42 Pa.C.S. § 9545(b)(1).

[16]     *Id*. § 9545(b)(3).

[17]     The ninety days represents the time period in which an appellant could have sought a writ of *certiorari* in the United States Supreme Court.

[18]     42 Pa.C.S. § 9545(b)(1)(i-iii).

Further, "[a]ny petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented."[19] If a PCRA petitioner establishes one of these exceptions, the petition will be considered as if it had been filed "within one year of the date the claim could have been presented."[20]

In his third PCRA petition, Brown alleged that the White letter and the Anthony Brown declaration constituted newly discovered facts under Section 9545(b)(1)(ii), and that the petition, therefore, was timely. The PCRA court found that the petition was untimely and that the court lacked jurisdiction to reach the merits. Thus, the court dismissed the petition.

On March 24, 2016, the Superior Court affirmed in part and reversed in part.[21] Relying in substantial part upon this Court's decision in *Commonwealth v. Yarris*,[22] the Superior Court held that the Anthony Brown declaration was not a newly discovered fact because it was inadmissible hearsay. In *Yarris*, the petitioner invoked the newly discovered facts exception based upon an affidavit executed by an individual who had heard another individual confess to the murder for which the petitioner had been convicted. This Court stated that:

> [a] claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the [newly discovered facts] exception to the timeliness requirement, nor would such a claim, even if timely, entitle [the petitioner] to relief under the PCRA.[23]

---

[19] *Id*. § 9545(b)(2).

[20] 42 Pa.C.S. § 9545(b)(2). Before 2018, Section 9545(b)(2) required the petition to be filed "within 60 days of the date the claim could have been presented." *See id.* (effective 1995 to 2018).

[21] *Brown*, 141 A.3d at 491.

[22] 731 A.2d 581 (Pa. 1999).

[23] *Id*. at 592.

As for the White declaration, the Superior Court held that there was a genuine issue of material fact as to whether Brown acted with due diligence in discovering the wiretap tapes and the transcripts thereof. The court remanded, directing the PCRA court to conduct an evidentiary hearing for the limited purpose of determining whether Brown alleged and proved the applicability of the PCRA's newly discovered facts exception with regard to the White declaration.

Before the record was remanded to the PCRA court, Brown came into possession of two new pieces of information: (1) a signed statement that was dated April 8, 2016, and received on April 13, 2016, from Brown's acquitted co-defendant, Acey Taylor, III, stating that Taylor falsely had implicated Brown at trial; and (2) an affidavit dated April 24, 2016, which Brown received on or about April 29, 2016, from Darnell Hines, in which Hines recanted his trial testimony that he had observed Brown shoot Officer Naim.

Apparently unaware that, on May 6, 2016, the PCRA court had appointed counsel, on May 23, 2016, Brown filed a *pro se* motion for leave to file an amended PCRA petition, as well as an amended PCRA petition, to which Brown attached the Taylor statement and Hines affidavit. On July 26, 2016, the PCRA court held that it could not substantively consider the new evidence in light of the limited nature of the Superior Court's remand. The PCRA court further denied Brown's motion for leave to file an amended PCRA petition, providing that "[a]ll matters raised in that Motion are waived, are untimely [ ], do not fall within any exception as set forth at [42 Pa.C.S. § 9545(b)(1)], and are, therefore, Ordered stricken from this record."[24]

Counsel filed amended petitions on February 10, 2017, April 28, 2017, and September 21, 2017. On September 24, 2017, Brown filed a discovery motion seeking

---

[24] PCRA Ct. Order, July 26, 2016, at 1-2. Although the PCRA court referenced Section 9545(b)(2), it is apparent from the context that it was referring to Section 9545(b)(1).

from the Commonwealth any statement made by Anthony "Ali" Dorsett. The Commonwealth provided none of the requested discovery. The PCRA court held a hearing limited to the issues subsumed within the Superior Court's remand order. On September 21, 2018, the court denied relief. On October 5, 2018, Brown timely appealed.

On or about November 2, 2018, while the appeal was pending in the Superior Court, Brown spoke with a fellow inmate who recently had been transferred to the prison where Brown resided. This inmate, Travon Dawkins, informed Brown that, as part of a pending criminal case in Beaver County, Dawkins had received in discovery a statement made by Dorsett as part of a federal plea deal. In 2009, as part of the plea, Dorsett agreed to provide truthful information to federal officials about various homicides in Aliquippa. In fulfilling this obligation, Dorsett told federal officials that, while Dorsett was in "the hole" at the Beaver County Jail, Tusweet Smith, who also was in "the hole," told Dorsett that he (Tusweet Smith), not Brown, shot and killed Officer Naim. Tusweet Smith reportedly said that he had obtained the gun that he used to kill the officer from someone who had purchased (or otherwise obtained) the gun from Brown. The Commonwealth did not disclose this statement to Brown.

When Brown learned of the Dorsett statement, he alerted PCRA counsel. On November 2, 2018, counsel met with Dawkins and obtained a copy of the discovery file, including Dorsett's plea deal. Because Brown already had a PCRA petition pending on appeal, Brown could not immediately raise a new claim predicated upon the Dorsett/Tusweet Smith statement.[25] On October 2, 2019, the Superior Court affirmed the

---

[25] *See Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000), *abrogated on other grounds*, *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020).

PCRA court's denial of Brown's third PCRA petition.[26]  On June 10, 2020, this Court denied allowance of appeal.[27]

On June 4, 2021, Brown filed the PCRA petition that is the subject of this appeal. In this petition, his fourth, Brown raised two substantive claims for a new trial.[28]  First, Brown raised an after-discovered evidence claim premised upon the Taylor statement and Hines affidavit.  Second, Brown argued that the Commonwealth violated *Brady v. Maryland*[29] when it failed to disclose evidence related to Dorsett's 2009 federal plea deal, including the Dorsett/Tusweet Smith statement.  Brown alleged that, had the

---

[26]  *Commonwealth v. Brown*, 1468 WDA 2018, 2019 WL 4864142 (Pa. Super. Oct. 2, 2019) (non-precedential).

[27]  *Commonwealth v. Brown*, 235 A.3d 1068 (Pa. 2020).  The denial of allowance of appeal was not unanimous.  *See id*. (Wecht, J., concurring and dissenting) (dissenting from the denial of allocatur on the issue of whether the Superior Court erred in finding that the PCRA court lacked jurisdiction to consider a new PCRA petition while a prior PCRA petition is on remand).

[28]  To be eligible for relief, a PCRA petitioner is required to establish that the conviction resulted from one of several circumstances, including "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."  42 Pa.C.S. § 9543(a)(2)(vi).

[29]  373 U.S. 83 (1963).  In order to establish a *Brady* claim, a defendant must prove that the evidence was (1) favorable to the defendant, either because it is exculpatory or because it impeaches; (2) suppressed by the Commonwealth, willfully or inadvertently; and (3) material, in that its omission resulted in prejudice to the defendant. *Commonwealth v. Spotz*, 47 A.3d 63, 84 (Pa. 2012).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Commonwealth v. Lambert*, 884 A.2d 848, 854 (Pa. 2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Evidence that tends to impeach a prosecution witness must also be disclosed under *Brady*.  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959).  *Brady* evidence is not required to be admissible to constitute grounds for relief.  *See Commonwealth v. Johnson*, 174 A.3d 1050, 1056 (Pa.  2017).  *Brady* obligations extend to and include PCRA proceedings.  *Commonwealth v. Williams*, 732 A.2d 1167, 1175-76 (Pa. 1999) (noting that "the Commonwealth's obligations under *Brady* continue through all stages of the judicial process").

Dorsett/Tusweet Smith statement been disclosed in prior PCRA proceedings, "it would have undisputedly affected PCRA counsel's preparation and investigation."[30] Relevant to the present appeal, Brown asserted that the *Brady* claim premised upon the Dorsett/Tusweet Smith statement satisfies two exceptions to the PCRA's one-year time bar: the newly discovered facts exception in Section 9454(b)(1)(ii), and the governmental interference exception in Section 9545(b)(1)(i).

On September 29, 2021, the PCRA court, believing that the petition was untimely and without merit, issued a Rule 907(1)[31] notice of intent to dismiss the PCRA petition without an evidentiary hearing. In particular, the PCRA court held that the law of the case doctrine precluded it from considering the Taylor statement and the Hines affidavit.[32]

With regard to the Dorsett/Tusweet Smith statement, the PCRA court addressed the merits of Brown's *Brady* claim that was predicated upon this statement. According to the PCRA court, because the Dorsett/Tusweet Smith statement did not exist until April 2009, Brown was unable to show that, had the Commonwealth disclosed it, the outcome of the trial (in 2002) would have been different. The PCRA court also rejected Brown's argument that the disclosure of this statement likely would have resulted in a different outcome in prior PCRA proceedings. According to the PCRA court, Brown did not explain how its disclosure would have altered these outcomes, and the PCRA court could not discern how the Dorsett/Tusweet Smith statement could have done so. Alternatively, the

---

[30]    PCRA Petition, 6/4/2021, ¶ 249, at 44.

[31]    Pa.R.Crim.P. 907(1).

[32]    The law of the case doctrine generally refers to a family of rules that "embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). In the PCRA court's view, a prior ruling related to a prior PCRA petition already resolved claims regarding the Taylor statement and the Hines affidavit.

PCRA court also held that the Dorsett/Tusweet Smith statement was inadmissible hearsay evidence, and that it, therefore, could not form the basis of a *Brady* claim or, by extension, the governmental interference timeliness exception.[33]

Turning to the applicability of the newly discovered facts timeliness exception, the PCRA court again characterized Dorsett's statement and Tusweet Smith's confession as inadmissible hearsay, and held that such evidence cannot establish the newly discovered facts exception. The PCRA court relied upon the Superior Court's opinion from the appeal of the denial of Brown's third PCRA petition.[34] Therein, relying upon *Yarris*, the Superior Court held that the Anthony Brown affidavit did not satisfy the timeliness exception for newly discovered facts because it was inadmissible hearsay. Applying *Brown* and *Yarris*, the PCRA court held that the Dorsett/Tusweet Smith statement was hearsay, and that it was not subject to any hearsay exception that would permit its admission into evidence.

The PCRA court specifically rejected the argument that the Tusweet Smith confession to Dorsett would be admissible as a statement against penal interest. Generally, statements against interest are admissible as an exception to the bar against hearsay evidence if: (1) the circumstances provide clear assurances that the statement was trustworthy and reliable;[35] and (2) the declarant is unavailable to testify.[36] The PCRA court found there to be no corroborating circumstances that would enhance the reliability

---

[33] PCRA Ct. Op., 9/29/2021, at 9 (citing *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995) (reversing grant of *habeas corpus* relief where withheld evidence was inadmissible because the disclosure of inadmissible evidence was not reasonably likely to have resulted in a different outcome)).

[34] *See Brown*, 141 A.3d at 501-02.

[35] *Commonwealth v. Williams*, 640 A.2d 1251, 1263 (Pa. 1994) ("Declarations against penal interest are admissible as an exception to the hearsay rule only where there are existing circumstances that provide clear assurances that such declarations are trustworthy and reliable."); Pa.R.E. 804(b).

[36] Pa.R.E. 804(b).

of the statement, and thus found nothing to indicate that the Tusweet Smith confession to Dorsett was sufficiently trustworthy to qualify as a statement against penal interest. Nor, in the PCRA court's view, was Tusweet Smith unavailable to testify.

The PCRA court further held that the *Brady* claim that was predicated upon the Dorsett/Tusweet Smith statement failed on the merits because Brown was unable to show that the inadmissible hearsay evidence would have changed the outcome of the trial had the Commonwealth disclosed it.

Brown filed a response to the PCRA court's notice of intent to dismiss. On December 15, 2021, the PCRA court issued an order formally dismissing the petition. Brown filed a timely notice of appeal. The PCRA court did not direct Brown to file a Rule 1925(b) statement.[37] In lieu of a formal Rule 1925(a) opinion, the PCRA court instead referred to its September 29, 2021 opinion in support of its Rule 907 notice.

Brown appealed. Before the Superior Court, the Commonwealth agreed that Brown was entitled to a hearing on both the Taylor statement and the Hines affidavit. The Superior Court likewise agreed that the PCRA court erred in declining to review the claims predicated upon this evidence.[38] As for the Dorsett/Tusweet Smith statement, however, the Superior Court affirmed the PCRA court's order, albiet on alternative grounds. According to the Superior Court, Brown could not establish a timeliness exception based upon this statement because he had failed to provide the date on which he first became aware of it.[39]

---

[37] *See* Pa.R.A.P. 1925(b).

[38] *Commonwealth v. Brown*, 17 WDA 2022, 2023 WL 2507243, at *5 (Pa. Super. Mar. 15, 2023) (non-precedential).

[39] *Id*. at *7.

We granted Brown's petition for allowance of appeal[40] and held that the Superior Court erroneously affirmed the PCRA court's dismissal upon a defect that had not been identified in the PCRA court's Rule 907 notice. We remanded the matter to the Superior Court to review the PCRA court's reasons for rejecting the claim predicated upon the Dorsett/Tusweet Smith statement.

On remand, the Superior Court assessed whether Brown's *Brady* claim, predicated upon the Dorsett/Tusweet Smith statement, met the newly discovered facts exception and/or the governmental interference timeliness exception. Relying upon *Yarris*, the Superior Court affirmed the PCRA court, and held that a petitioner cannot rely upon inadmissible hearsay evidence to establish the newly discovered facts exception.[41] With respect to the governmental interference exception, the Superior Court held that the PCRA court erred by resolving the applicability of this exception by examining the merits of the underlying *Brady* claim. Because the governmental interference exception does not depend upon the merits of the underlying claim, the Superior Court remanded to the PCRA court to determine whether Brown satisfied this exception.[42] This remand presently is on hold pending this appeal.

Brown sought allowance of appeal from this Court solely as to the Superior Court's holding that Brown had failed to establish the newly discovered facts exception because

---

[40] *Commonwealth v. Brown*, 308 A.3d 768, 769 (Pa. 2023) (*per curiam*).

[41] 731 A.2d at 592 ("A claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the [newly discovered facts] exception to the timeliness requirement[.]"); *see also Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1270 (citing *Yarris* for the proposition that "a claim based on inadmissible hearsay does not implicate" the newly discovered facts exception).

[42] *See Commonwealth v. Stokes*, 959 A.2d 306, 310 (Pa. 2008); *Abu-Jamal*, 941 A.2d at 1268 (explaining that the governmental interference exception to the PCRA time bar requires proof that "the failure to previously raise the [*Brady*] claim was the result of interference by government officials. . . .").

the Dorsett/Tusweet Smith statement purportedly is inadmissible hearsay. On January 28, 2025, this Court granted allowance of appeal to address "[w]hether a third-party confession to another person can serve as a newly-discovered fact under the PCRA."[43] Questions implicating the scope of the PCRA's statutory exceptions to the one-year time bar are questions of law over which our standard of review is *de novo*.[44] Our scope of review is plenary.[45]

## II. Arguments

Brown argues that a third party's confession, which the Commonwealth had failed to disclose, despite a specific discovery request for such information, constitutes a newly discovered fact under the plain language of Section 9545(b)(1)(ii) and this Court's decision in *Commonwealth v. Bennett*.[46] According to Brown, in order to be a newly discovered fact, evidence need not be admissible. To the extent that *Yarris* supports the lower courts' decisions to bar a third-party confession from being a newly discovered fact, Brown urges the Court to overturn *Yarris* and its progeny.

Brown also argues that the lower courts incorrectly assumed that the Dorsett/Tusweet Smith statement would be inadmissible hearsay if presented in statement form at an evidentiary hearing. However, Brown intends to present Tusweet Smith as a witness. He stresses that he provided the PCRA court with a witness certification to that effect. If Tusweet Smith denies making the confession, Brown intends to impeach him with Dorsett's statement to the contrary. If Tusweet Smith refuses to testify, Brown views the Dorsett/Tusweet Smith statement as admissible as a statement

---

[43] *Commonwealth v. Brown*, 333 A.3d 310 (Pa. 2025) (*per curiam*).

[44] *Commonwealth v. Fahy*, 959 A.2d 312, 316 (Pa. 2008).

[45] *Commonwealth v. Colavita*, 993 A.2d 874, 886 (Pa. 2010).

[46] 930 A.2d 1264 (Pa. 2007).

against interest. To the extent that the lower courts held that Tusweet Smith's confession was not a statement against interest because it lacked indicia of trustworthiness, Brown argues that such a requirement does not apply in PCRA proceedings, which are civil, rather than criminal, in nature.

Brown maintains that, if he is required to provide corroborating circumstances in order to introduce the Dorsett/Tusweet Smith statement as a statement against interest, he would so by relying upon other evidence that he has obtained which implicates Tusweet Smith in the murder, including evidence that Tusweet Smith's family had attempted to dispose of the murder weapon, that Tusweet Smith had threatened to kill a police officer and offered money to incentivize someone to commit the murder, that a police dog began to track toward Tusweet Smith's grandmother's house on the night of the murder, that two other individuals heard Tusweet Smith confess, and that the initial investigation into Tusweet Smith discovered ammunition for the type of gun used in the murder at Tusweet Smith's residence. Additionally, Brown relies upon the fact that Dorsett and Tusweet Smith were close personal friends who owned property together at the time that Tusweet Smith confessed to Dorsett. Brown argues that Tusweet Smith's opportunity to commit the crime, as well as evidence identifying him as a suspect, further would corroborate Tusweet Smith's confession to Dorsett. Brown argues more broadly that, under the lower courts' reasoning, nothing contained in a PCRA petition would ever be sufficient to warrant an evidentiary hearing in order to establish a newly discovered fact because everything contained within a PCRA petition is hearsay, as there has not yet been the opportunity to present testimony at a hearing.

Before responding to Brown's arguments, the Commonwealth presents an argument that, it believes, renders the issue before us moot. The Commonwealth argues that Brown did not establish the newly discovered facts exception because Brown is not

alleging previously unknown facts; he instead is offering nothing more than a new source for previously known facts. The Commonwealth considers the previously known fact to be that Tusweet Smith confessed to the murder. In the Commonwealth's view, Dorsett is merely a new source for this known fact. According to the Commonwealth, Brown was aware that Tusweet Smith had confessed to the murder because, in his first PCRA petition, Brown raised a claim of after-discovered evidence premised upon a similar confession. At that time, Brown relied upon a statement by Steve Zambory, who asserted that, on January 14, 2005, while Zambory and Tusweet Smith were incarcerated in the Beaver County Jail, Tusweet Smith confessed to killing Officer Naim. In order to support this argument, the Commonwealth relies upon *Commonwealth v. Riviera*,[47] *Commonwealth v. Lopez*,[48] and *Commonwealth v. Small*.[49] Because, in the Commonwealth's view, the issue upon which the Court granted review is moot, it urges the Court to dismiss the appeal.

Turning to the question of admissibility, the Commonwealth argues that the lower courts correctly held that inadmissible hearsay is inadequate to establish the newly discovered facts timeliness exception. According to the Commonwealth, there is no way to prove the facts upon which the claim is predicated under Section 9545(b)(1)(ii) without evidence, and no way to prove that the predicate facts were unknown to the petitioner without proving what the predicate facts are. Because Brown proffered only inadmissible hearsay, the Commonwealth believes that he is not entitled to an evidentiary hearing and cannot meet his burden of proof under Section 9545(b)(1)(ii).

---

[47] 324 A.3d 452, 468 (Pa. 2024).

[48] 249 A.3d 993, 999-1000 (Pa. 2021).

[49] 238 A.3d 1267, 1286 (Pa. 2020).

### III. "Unknown to the petitioner" under Section 9545(b)(1)(ii)

Before resolving the issue upon which we granted allowance of appeal, we first must address the Commonwealth's mootness argument. Setting aside for the moment the merits of the Commonwealth's argument that Tusweet Smith's confession is a previously known fact, it is inaccurate to characterize this legal question as one of mootness. Generally, "cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation."[50] Mootness problems "arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome."[51] Under the mootness doctrine, we require an actual case or controversy at all stages of review, not merely at the time the complaint is filed.[52]

A petitioner's reliance upon a new source for a previously known fact does not implicate the mootness doctrine. Rather, it would reflect a failure by the petitioner to successfully meet the "unknown to the petitioner" clause of Section 9545(b)(1)(ii). Such a failure would deprive the PCRA court of jurisdiction to entertain the merits of the PCRA petition.[53] Although the claim would fail, it would not be by virtue of mootness.

Section 9545(b)(1)(ii) requires that a petitioner "allege" and "prove" that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]"[54] As the Commonwealth develops, this Court has held that Section 9545(b)(1)(ii) is not satisfied when a petitioner merely

---

[50] *Pap's A.M. v. City of Erie*, 812 A.2d 591, 599-600 (Pa. 2002) (citations omitted).

[51] *Id*.

[52] *Id*.

[53] *Commonwealth v. Towles*, 300 A.3d 400, 415 (Pa. 2023) ("It is well settled that the PCRA's timeliness requirements are jurisdictional in nature . . . .").

[54] 42 Pa.C.S. § 9545(b)(1)(ii).

relies upon a new source for previously known facts. "[W]hether a petitioner meets the requirements of the newly discovered facts exception ultimately turns on the petitioner's knowledge of previously unknown facts, not new evidence of a known fact, related to his claim."[55]

In his first PCRA petition, filed in 2005, Brown raised a substantive after-discovered evidence claim under Section 9543(a)(2)(vi). Brown attached a statement by Steve Zambory in which he recounted that, on January 14, 2005, Zambory was in a shared jail cell with Tusweet Smith when Tusweet Smith told Zambory that "Jamie Brown is doin[g] my time" and "I killed the pig," meaning Officer Naim.[56] The PCRA court denied relief, rejecting the Zambory/Tusweet Smith after-discovered evidence claim upon the basis that it was supported only by hearsay.[57] Although Brown appealed the denial of relief, he did not raise the Zambory/Tusweet Smith after-discovered evidence claim in that appeal. In the current PCRA petition, Brown raises a *Brady* claim predicated upon Brown's discovery, in 2018, of the 2009 statement by Dorsett. Again, the claim there was that, while incarcerated in the Beaver County Jail, Tusweet Smith confessed to killing Officer Naim.

The Commonwealth asserts that the "fact upon which the claim is predicated" is the fact that Tusweet Smith confessed to the murder. Not so. The fact that Tusweet Smith confessed to Zambory on January 14, 2005, is separate and distinct from the fact

---

[55]   *Rivera*, 324 A.3d at 468; *see also Small*, 238 A.3d at 1286 ("Bell's 1993 PCRA testimony was materially similar to his trial presentation, and thus did not reveal any previously unknown facts. . . . the statutory language commands that the operative 'facts' be 'unknown' to the petitioner."); *Commonwealth v. Lopez*, 249 A.3d 993, 999 (Pa. 2021) ("[T]his Court has held that the focus of this exception 'is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.'").

[56]   PCRA Petition, 6/4/2021, Ex. 3 (Statement of Steve Zambory).

[57]   PCRA Ct. Op., 2/13/2008, at 11 (unpaginated).

that Tusweet Smith independently confessed to another person (Dorsett) at another time. The previously known fact is that Tusweet Smith confessed to Zambory. The new and previously *unknown* fact is that Tusweet Smith confessed to Dorsett. A different confession, to a different individual, at a different time, necessarily is a distinct fact for purposes of Section 9545(b)(1)(ii). Tusweet Smith's confession to Dorsett is not a new source of a previously known fact, but a newly discovered fact entirely, and one that previously was unknown to Brown.

The cases upon which the Commonwealth relies do not compel a contrary conclusion. In *Rivera*, the parties agreed that a facially untimely PCRA petition satisfied the newly discovered facts exception.[58] We declined to find that an agreement sufficed to establish jurisdiction, and we remanded for the PCRA court to conduct an independent jurisdictional analysis. We instructed the PCRA court to be mindful of the distinction between "facts" under Section 9545(b)(1)(ii) and evidence: "[W]hile recently discovered evidence may reveal new facts, or even itself establish a new fact in some situations, whether a petitioner meets the requirements of the newly discovered facts exception ultimately turns on the petitioner's knowledge of previously unknown facts, not new evidence of a known fact, related to his claim."[59] Because the Dorsett/Tusweet Smith statement is not new evidence of a previously known fact, *Rivera* does not support the Commonwealth's position.

In *Lopez*, the PCRA petitioner claimed in 2005 that a witness against him had entered into an undisclosed plea deal with the Commonwealth for a reduced sentence.[60] In his fifth PCRA petition, filed in 2019, the petitioner raised a similar claim, but based

---

[58]     324 A.3d at 467.

[59]     *Id*. at 468.

[60]     249 A.3d at 998.

upon different information. "The only material difference for the claim in [the] Fifth PCRA Petition from the substantially identical claims in [the] 2005 petitions is that [the petitioner] now cites to a new source as support for them, namely [the witness'] 2003 habeas petition."[61] We held that the "substance of all" of these claims was the same: "a plea deal for a substantially shorter sentence than life imprisonment" which, if known to the petitioner, "could have been used as a basis for impeachment" against the witness.[62] The petitioner purported to allege a new fact in his fifth petition related to the length of the alleged plea deal, asserting that the deal was for an eight and one half to fifteen year sentence rather than for twenty to forty years. We held that this new detail was "a distinction without a difference" because none of the petitioner's claims were predicated upon the length of the plea deal. For purposes of the newly discovered facts exception, "the facts upon which [the] current claim is based have been known to [the petitioner] since at least 2005."[63] The Court therefore held that the fifth PCRA petition was untimely because the petitioner "merely cites to a newly identified source in further support for these previously known facts."[64]

*Lopez* is distinguishable. Brown previously relied upon one confession to raise a claim, and presently relies upon an entirely different confession as a predicate for the *Brady* claim. There are two confessions at play, given at different times, and discovered by Brown at different times. In *Lopez*, the petitioner relied upon the same plea deal in 2019 that he had relied upon in 2005. There was only one plea deal. The two confessions

---

[61]     *Id.* at 999.

[62]     *Id*. at 999-1000.

[63]     *Id*. at 1000.

[64]     *Id*.

here are two distinct facts under Section 9545(b)(1)(ii). The sole plea deal in *Lopez* was one predicate fact under Section 9545(b)(1)(ii).

In *Small*, we enforced the statutory requirement in Section 9545(b)(1)(ii) that the operative facts had to be unknown to the petitioner.[65] Our review of the record led to the conclusion that certain transcripts upon which the petitioner relied were materially consistent with evidence introduced at his trial. There was not, as the petitioner had argued, a recantation of anyone's trial testimony. Rather, the testimony in the transcripts was substantively consistent with the trial testimony. As such, none of the facts revealed in the newly discovered transcripts "can be deemed 'unknown' under the circumstances of this case."[66] Whereas *Small* concerned two iterations of (essentially) the same testimony, Brown relies upon an entirely new and separate confession in his present PCRA petition. *Small* is, therefore, also distinguishable.[67]

---

[65] 238 A.3d at 1286.

[66] *Id.* at 1287.

[67] The Commonwealth cites to several other cases as if they support its position. They do not. *See Commonwealth v. Reid*, 235 A.3d 1124, 1153 (Pa. 2020) (holding that the petitioner failed to establish the "unknown to the petitioner" requirement of Section 9545(b)(1)(ii) where the fact upon which the petitioner's due process claim was predicated was the District Attorney's authorization to seek the death penalty, a fact that was ascertainable upon the exercise of due diligence); *Commonwealth v. Edmiston*, 65 A.3d 339, 352 (Pa. 2013) (holding that the fact upon which the petitioner relied under Section 9545(b)(1)(ii) was in the public domain, and therefore could have been discovered earlier through the exercise of due diligence), *overruled by Small*, 238 A.3d at 1286 n.12; *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (holding that the petitioner did not allege and prove the requirements of Section 9545(b)(1)(ii) where he failed to establish that he could not have obtained the fact upon which the claim was predicated any earlier with the exercise of due diligence); *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1269 (Pa. 2008) (holding that a claim predicated upon the fact that a witness stated that she perjured herself at trial was the same claim of perjury that the petitioner actively explored at trial). None of these cases concern the "new source" rationale.

We reject the Commonwealth's proffered argument that Brown is alleging previously known facts from a different source. Two separate confessions are two distinct facts for purposes of the newly discovered facts exception.[68]

## IV. Third party confession as a newly discovered fact

Under Section 9545(b)(1), a petition filed beyond a year of the date that the judgment becomes final is untimely "unless the petition *alleges* and the petitioner *proves*" the existence of a timeliness exception.[69] These requirements are applicable to all three of the PCRA's timeliness exceptions. By its plain language, the PCRA initially imposes upon a petitioner only the burden to "allege," *i.e.*, to assert something as true before there

---

[68] The Dissenting Opinion takes up the Commonwealth's argument on this issue, asserting that with the Dorsett/Tusweet Smith statement, Brown discovered a new conduit for the same fact*, i.e.*, that Tusweet Smith confessed to killing Officer Naim. Diss. Op. at 4. The Dissenting Opinion asserts that "the alleged relevant 'fact' should not be so minutely characterized;" it would not consider two separate confessions to be two separate facts. *Id.* Taken to its logical conclusion, the Dissenting Opinion would bar any confession by Tusweet Smith from being considered a newly discovered fact, reasoning that, in 2005, Brown knew of Tusweet Smith's confession to Zambory. Were Smith himself to come forward to make a confession, the Dissenting Opinion presumably would not consider this to be a new fact, but rather merely a "new source" for the alleged "fact."

It was unknown to Brown that Tusweet Smith confessed to Dorsett or that Dorsett reported this confession to state and county law enforcement authorities pursuant to a federal plea deal that required him to provide truthful information. Tusweet Smith's confession to Dorsett is not cumulative of his confession to Zambory. Rather, the two confessions are two distinct facts predicated upon two different witnesses, and two different statements, made at two different times. Unlike the circumstances in *Commonwealth v. Abu-Jamal*, 947 A.2d 1263 (Pa. 2008), in which the petitioner relied upon new evidence that two Commonwealth witnesses perjured themselves, neither Dorsett nor Smith testified at Brown's trial. There was no opportunity to cross-examine these individuals in order to test the veracity of their statements. There is no basis in law to suggest that we "should" consider a separate, distinct confession to be merely duplicative of an earlier confession to a different person. The Dissenting Opinion provides no reason or basis to support such a conclusion.

[69] 42 Pa.C.S. § 9545(b)(1) (emphasis added).

has been an opportunity to prove that it is true.[70] Proof through evidence comes later. At the petition stage, the petitioner can only make factual allegations which, if proven, would establish a timeliness exception. This is done through making assertions in the petition and supporting these assertions with affidavits, declarations, statements, documentary evidence, or anything else that supports the invocation of a timeliness exception.[71] At this point, admissibility of evidence is not at issue. The petitioner only must demonstrate, through allegations and documentary support, how the petitioner will prove the applicability of the timeliness exception.[72]

If the PCRA court can determine from the record that "there are no genuine issues concerning any material fact and that the [petitioner] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings," then an evidentiary hearing is unnecessary.[73] However, if the petitioner alleges genuine issues of material fact that, if proven, would entitle the petitioner to relief, then the petitioner is entitled to a hearing.

---

[70] BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "allege" as "[t]o assert as true, esp. that someone has done something wrong, though no occasion for definitive proof has yet occurred"); BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 43 (2d ed.1995) (defining "allege" as "formally to state a matter of fact as being true or provable, without yet having proved it").

[71] Pa.R.Crim. 902(A)(12)(b) (requiring a PCRA petition to contain the facts supporting the grounds for relief, along with any "affidavits, documents, and other evidence showing such facts").

[72] *See Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2001) ("Inherent in this pleading and proof requirement is that the petitioner must not only state what his issues are, but also he must demonstrate in his pleadings and briefs how the issues will be proved.").

[73] Pa.R.Crim. 907(1). Relief may be granted without a hearing "when the petition and answer show that there is no genuine issue concerning any material fact and that the defendant is entitled to relief as a matter of law." *Id*. 907(2).

If the PCRA petition warrants a hearing as to the timeliness exceptions, then the petitioner has the burden to *prove* the allegations through admissible evidence.[74] The burden at the filing stage is only to allege or plead facts establishing an exception; the burden at the hearing is to prove contested, material facts through the admission of evidence.[75] Based upon the plain language of Section 9545(b)(1)(ii), we agree with the Commonwealth that a petitioner generally cannot establish a disputed predicate fact under Section 9545(b)(2)(ii) unless the petitioner can prove that fact at a hearing with admissible evidence.

We have described the timeliness exception at Section 9545(b)(1)(ii) as having two components: "1) 'the *facts* upon which the claim was predicated were *unknown*' to the petitioner and 2) 'could not have been ascertained by the exercise of *due diligence*.'"[76] If the petitioner alleges and proves these components, then the PCRA court has jurisdiction over the claim under this subsection.[77] Black's Law Dictionary defines "fact" as follows:

> 1. Something that actually exists; an aspect of reality <it is a fact that all people are mortal>. • Facts include not just tangible things, actual occurrences, and relationships, but also states of mind such as intentions and the holding of opinions.

> 2. An actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation <the jury made a finding of fact>. — Also termed historical fact.

---

[74] *See, e.g.*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "prove" as "[t]o establish or make certain; to establish the truth of (a fact or hypothesis) by satisfactory evidence").

[75] *Commonwealth v. Fahy*, 737 A.2d 214, 218 (Pa. 1999) ("[I]t is for the petitioner to allege in his petition and to prove that he falls within one of the exceptions found in § 9545(b)(1)(i)–(iii).").

[76] *Bennett*, 930 A.2d at 1272 (emphasis in original).

[77] *Id*.

3. An evil deed; a crime <an accessory after the fact>.[78]

Over the years, this Court has endeavored to delineate what is, and is not, a "fact" for purposes of this timeliness exception. In *Bennett*, the petitioner alleged that he was unaware that PCRA counsel failed to file an appellate brief on his behalf, and that he could not have discovered this "fact" through the exercise of due diligence. We held that these allegations, "if proven, fall within the plain language of subsection (b)(1)(ii)."[79] We characterized this fact as a "complete denial of counsel"[80] and distinguished this fact from the line of cases holding that counsel's ineffectiveness generally is not a newly discovered fact for purposes of Section 9545(b)(1)(ii).[81] We also have held that the publication of a legal decision is not a "fact" under Section 9545(b)(1)(ii).[82] In *Commonwealth v. Towles*,

---

[78] BLACK'S LAW DICTIONARY (12th ed. 2024).

[79] 930 A.2d at 1272.

[80] *Id*.

[81] *See, e.g., Commonwealth v. Breakiron*, 781 A.2d 94, 100 (Pa. 2001) ("[C]urrent counsel's recognition of a possible claim regarding improper jury influences that occurred over a decade ago is not a newly discovered 'fact' encompassed by section 9545(b)(1)(ii)."); *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 785 (Pa. 2000) ("[S]ubsequent counsel's review of previous counsel's representation and a conclusion that previous counsel was ineffective is not a newly discovered 'fact' entitling Appellant to the benefit of the exception for [newly discovered facts]."); *see also Commonwealth v. Bronshtein*, 752 A.2d 868, 871 (Pa. 2000) (holding that the newly discovered facts exception is not satisfied by allegation that "facts" which form basis of claim were not knowable until present counsel advised defendant); *Commonwealth v. Pursell*, 749 A.2d 911, 916-917 (Pa. 2000) (same).

[82] *Commonwealth v. Watts*, 23 A.3d 980, 987 (Pa. 2011) ("[V]iewed in the appropriate manner, our publication of *Bennett* did not trigger section 9545(b)(1)(ii) because it was not an event that spawned a new claim.").

the Court held that that an assertion by a trial witness that the testimony was the result of a threat by or understanding with the Commonwealth can be a newly discovered fact.[83]

Under *Bennett* and its progeny, courts necessarily must consider the factual predicate of the underlying claim for purposes of establishing the timeliness exception and determining whether an evidentiary hearing is warranted. The burden imposed by Section 9545(b)(1) to prove the applicability of a timeliness exception includes establishing contested predicate facts. This can only be done with admissible evidence; otherwise one does not "prove" anything. And this can only be done at an evidentiary hearing. Stated otherwise, if a PCRA petitioner alleges sufficient facts in his petition to implicate the plain terms of the exception, he must be afforded a hearing to prove those contested allegations and the applicability of the exception with admissible evidence. Inadmissible evidence, on the other hand, "proves" nothing.

Here, however, we agree with Brown that he was entitled to the opportunity to prove his allegations at an evidentiary hearing. Brown alleged that Tusweet Smith's confession to Dorsett, as provided in Dorsett's statement to authorities, is the fact upon which his *Brady* claim is predicated, and that this fact was not previously known. There is no dispute that Brown exercised due diligence in attempting to obtain this information. Brown appended to the PCRA petition witness statements as documentary support for

---

[83]    300 A.3d 400 (Pa. 2023). In *Towles*, the Court ultimately held that the petitioner failed to establish the newly discovered facts exception because the petitioner did not call the witness to testify at the PCRA hearing. *Id*. at 416 (holding that the petitioner did not demonstrate "the operative newly discovered factual predicate upon which his claim is premised—that factual predicate being that [the witness] claimed that he provided his testimony against [the petitioner] based on a threat by or understanding with the Commonwealth"). This author filed a concurring opinion, disagreeing with the Majority's treatment of the newly discovered facts exception. *Id.* at 425-26 (Wecht, J., concurring) ("The newly discovered fact here is [the witness's] inducement allegation . . . . Today's Majority would require [the petitioner] to demonstrate that the Commonwealth actually induced [the] testimony in order for [the petitioner] to overcome the timeliness hurdle.").

the allegations that he intended to prove, and described the evidence he intended to present, including the testimony of Dorsett, Tusweet Smith, and others, as well as written documentation of Dorsett's statement to local, state, and federal authorities. For purposes of the newly discovered facts exception, Brown more than sufficiently proffered evidence that would warrant the opportunity to prove the factual predicate of his claim. Brown is entitled to a hearing.

That said, in order to establish the predicate fact, Brown will have to prove at that hearing, with admissible evidence, that Tusweet Smith made the confession to Dorsett. Brown does not have to prove that Tusweet Smith, in fact, committed the murder. In this respect, Brown has alleged all that Section 9545(b)(1)(ii) requires of him. Brown's allegations raise a genuine issues of material fact concerning Tusweet Smith's confession to Dorsett. Under Rule 908, therefore, Brown is entitled to a hearing to prove his allegations to establish the predicate fact upon which the *Brady* claim is based for purposes of the newly discovered facts exception.

In his petition, Brown asserted, in addition to timeliness, that the Dorsett/Tusweet Smith statement is the predicate fact for a *Brady* claim and/or an after-discovered evidence claim.[84] Justice Dougherty's Concurring and Dissenting Opinion posits that a *Brady* claim is cognizable not as a claim of after-discovered evidence under Section

---

[84] PCRA Petition, 6/4/2021 at 27 ¶ 148.iii ("Mr. Brown . . . is entitled to a new trial based on after-discovered evidence" with regard to the Dorsett/Tusweet Smith statement "which was never disclosed to Mr. Brown in violation of *Brady*…"); *id.* at 43 (asserting that Brown is entitled to a new trial based upon the Dorsett/Tusweet Smith statement, which is after-discovered evidence); *id.* at 43, ¶ 245 (asserting that his *Brady* claim is cognizable as one of after-discovered evidence under Section 9543(a)(2)(vi)); *id.* at ¶ 259 (even if the . . . [Dorsett/Tusweet Smith statement] would not qualify at *Brady* evidence because his statement was provided in 2009—after [his] trial, it still plainly meets the after-discovered evidence test[.]").

9543(a)(2)(vi), but as a substantive constitutional violation under Section 9543(a)(2)(i).[85,] [86] Justice Dougherty acknowledges that certain facts may support both a *Brady* claim and a claim of after-discovered evidence, but asserts that the success of the claim will turn upon whether the petitioner can satisfy the substantive tests for that claim.

Justice Dougherty disagrees that the predicate fact presently at issue for purposes of establishing timeliness is the Dorsett/Tusweet Smith statement. Instead, to ascertain timeliness, Justice Dougherty would consider the nature of the underlying claim and the petitioner's burden to establish an entitlement to substantive relief under this claim. The difference between an after-discovered evidence claim and a *Brady* claim matters for purposes of the Justice Dougherty's timeliness analysis because, it asserts, the nature of the claim will determine the predicate fact upon which the claim is based.[87] According to Justice Dougherty, the petitioner must establish that this claim-dependent fact meets the timeliness criteria of Section 9545(b)(1)(ii).

In this case, the nature of the underlying substantive claim for relief does not impact the timeliness analysis. Whether the underlying claim predicated upon the Dorsett/Tusweet Smith statement is or is not a *Brady* claim, and whether it is cognizable under Section 9543(a)(2)(i) or (vi), are matters for merits review, not for assessment of jurisdictional timeliness. Whether Brown can establish a *Brady* claim, and which

---

[85] 42 Pa.C.S. § 9543(a)(2)(i) (providing relief from convictions or sentences resulting from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place").

[86] Justice Dougherty's Concurring and Dissenting Op. at 3.

[87] *Id*. at 4.

subsection of Section 9543(a)(2) he relies upon for substantive relief, are considerations for the PCRA court in the first instance only after finding that the claim is timely.[88]

A newly discovered fact could, hypothetically, support multiple cognizable claims under Section 9543(a)(2). The same fact could, for example, give rise to a constitutional violation under Section 9543(a)(2)(i), an after-discovered evidence claim under Section 9543(a)(2)(vi), or even a claim of trial counsel ineffectiveness under Section 9543(a)(2)(ii). These are matters for a petitioner to establish once the PCRA court has jurisdiction to entertain the claim, and for the PCRA court to resolve at that time.

For timeliness purposes, the predicate fact under Section 9545(b)(1)(ii) is the Dorsett/Tusweet Smith statement. Once Brown establishes timeliness, then the PCRA court can examine the nature of the substantive claim.

---

[88] Justice Dougherty correctly reviews our precedent holding that the timeliness exceptions are claim specific, rather than petition based. Justice Dougherty's Concurring and Dissenting Op. at 4-5. This precedent is intact. Regardless of whether Brown intends to proceed under Section 9543(a)(2)(i) or (vi), the Dorsett/Tusweet Smith statement is the fact upon which the claim is predicated. For the same reason, we are not, as Justice Dougherty asserts, writing out of Section 9545(b)(1)(ii) the phrase "upon which the claim is predicated." The same predicate fact may serve more than one type of underlying claim.

In Justice Dougherty's view, in order to establish the newly discovered facts timeliness exception, Brown would have to come forward not only with the Dorsett/Tusweet Smith statement, but also the fact of the Commonwealth's suppression of this statement. Justice Dougherty's Concurring and Dissenting Op. at 6-8. Although Brown may have to establish the Commonwealth's suppression in order to obtain merits relief, the new fact that Brown discovered—the fact that prompted him to understand that a third party had, yet again, confessed to the murder, and to seek relief—is the third-party confession. In this case in particular, the statement was discovered in the files of county and state authorities pursuant to a federal plea deal. The discovery of this statement suggests not only that a third party confessed, but also that the Commonwealth suppressed this statement. Having obtained this statement, Brown promptly sought relief in the PCRA court. Brown was entitled to use the tools of discovery to ascertain precisely what the Commonwealth knew and what the Commonwealth suppressed. It is not clear what more Justice Dougherty would have Brown do in order to establish the newly discovered facts exception.

The Commonwealth asserts that Brown should not be afforded an evidentiary hearing because, in its view, the evidence that Brown intended to offer was inadmissible. The lower courts agreed with the Commonwealth, holding that evidence of the Dorsett/Tusweet Smith statement was not admissible and that, without admissible evidence, Brown would be unable to prove the predicate fact. Central to the Commonwealth's argument and the lower courts' analyses is *Yarris*.

In *Yarris*, the PCRA petitioner attempted to establish the newly discovered facts exception by relying upon two affidavits that he had included in his PCRA petition.[89] The first affidavit was by Agnes Sloss. Sloss recounted that, while she was visiting with a neighbor, a man named Jay Jenkins joined them. Jenkins allegedly stated that he, and not Yarris, had committed the murder for which Yarris had been convicted. In the second affidavit, Phyllis Wagner averred that Sloss had told her about Jenkins' confession. This Court held that neither affidavit satisfied the newly discovered facts exception, because the petitioner failed to establish that he could not have obtained the allegedly exculpatory information any earlier by the exercise of due diligence.[90]

In *dicta*, however, the Court stated that, even if the petitioner "were able to surmount the bar of untimeliness," he would be unable to establish the merits of the underlying after-discovered evidence claim.[91] An after-discovered evidence claim, this Court explained, requires the petitioner to plead and to prove "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."[92] The Court opined that

---

[89]     731 A.2d at 590-91.

[90]     *Id*. at 591.

[91]     *Id*.

[92]     42 Pa.C.S. § 9543(a)(2)(vi).

the petitioner could not make that showing in the case because the Sloss statement about Jenkins' confession was inadmissible hearsay. According to the *Yarris* Court, Jenkins' alleged confession was not an admissible statement against interest. The Court explained that "[d]eclarations against penal interest are admissible as an exception to the hearsay rule only where there are existing circumstances that provide clear assurances that such declarations are trustworthy and reliable."[93] The Court found no corroborating circumstances regarding the Sloss affidavit that would satisfy this requirement. As for the Wagner affidavit, the Court explained that Wagner's statement was hearsay within hearsay, and held that it suffered from the same untrustworthiness as the Sloss affidavit. To the Court, neither statement would have been admissible at trial, and could not, therefore, have changed the outcome of the trial had it been introduced, as is required by Section 9543(a)(2)(vi). The Court then offered the sweeping conclusion that "evidence which purportedly reveals that someone other than [the petitioner] committed the murder is hearsay, not within any exception [to the rule against hearsay], and so unreliable as to be inadmissible."[94]

The Court's admissibility analysis appears in *dicta* during discussion of the merits of the underlying after-discovered evidence claim, not the timeliness exception.[95] This distinction is not insignificant. If introduced at a trial for the truth of the matter asserted—that Jenkins was the killer—the statements would be hearsay and would require proof of an exception to the rule against hearsay to be admissible. By contrast, the "fact" to be proven in order to establish the newly discovered facts exception is not necessarily the

---

[93]     731 A.2d at 591.

[94]     *Id*. at 592.

[95]     *Id*. at 591 ("even if Appellant were able to surmount the bar of untimeliness with respect to this claim," the underlying claim would fail on the merits because the after-discovered evidence would not be admissible).

truth of the matter asserted. For the exception, the purpose of the statement was not to prove that Jenkins killed the victim; it was to prove that Jenkins made the confession. Whether evidence would be admissible to establish the underlying claim is distinct from whether evidence is admissible to establish the existence of a "fact" that establishes the timeliness exception. Yet, in concluding the analysis, the *Yarris* Court stated that:

> [a] claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the [newly discovered facts] exception to the timeliness requirement, nor would such a claim, even if timely, entitle [a petitioner] to relief under the PCRA.[96]

This sentence indicated that the timeliness analysis hinged upon the admissibility at trial of the after-discovered evidence. But that is not correct. The evidence only must be admissible at the evidentiary hearing.

After *Yarris*, this Court has taken pains to avoid conflating an analysis of the timeliness exceptions with the merits of the underlying claim. In *Bennett*, for example, we held that the Superior Court erred by relying upon *Yarris* to require a petitioner to establish the merits of the underlying claim in order to establish the newly discovered facts exception.[97] We held that none of the requirements of the underlying after-discovered evidence claim, including consideration of the impact of the evidence had it been introduced, "exist in § 9545(b)(1)(ii)."[98] A petitioner's satisfaction of the newly discovered facts exception does not in any way depend upon the merits of the underlying claim.[99]

---

[96] *Id*. at 592.

[97] *Bennett*, 930 A.2d at 1271 & n.10. *Bennett* also attempted to disentangle the terminology of the newly discovered facts timeliness exception in Section 9545(b)(1)(ii) from the substantive claim of after-discovered evidence in Section 9543(a)(2)(vi). *Id*. at 1271-72.

[98] *Id*. at 1271 ("While the additional requirements [of Section 9543(a)(2)(vi)] are consistent with a *Brady* claim, . . . none of these requirements exist in § 9545(b)(1)(ii).").

[99] *Id*.

The newly discovered facts exception "is not so narrow as to limit itself to only claims involving 'after-discovered evidence.'"[100]  A petitioner may satisfy the timeliness exception even if his or her underlying, substantive claim turns out to be meritless.

Indeed, that is precisely what occurred in *Commonwealth v. Natividad*.[101]  There, this Court concluded that the petitioner established the newly discovered facts exception, but then ultimately rejected the petitioner's underlying *Brady* claim.  The petitioner had relied upon a third-party confession that was discovered in the Commonwealth's files. The Court held that the petitioner "satisfied an exception to the PCRA's time-bar with respect to this claim, as the facts upon which his *Brady* claim were predicated—that the Commonwealth withheld evidence pertaining to another suspect—were unknown to him until the Commonwealth was forced to open its files[.]"[102]  However, on the merits of the claim, this Court held that the withheld evidence would not have changed the outcome of the trial had it been introduced.  Critically, that ruling had no impact on our initial timeliness analysis.

*Yarris* does not stand for the proposition that a third-party confession can never be a newly discovered fact.  Under the plain language of Section 9545(b)(1), such a fact can constitute a newly discovered fact so long as the petitioner alleges and proves the existence of this predicate fact, that it was previously unknown, and that it could not have been ascertained earlier by the exercise of due diligence.

The function of the timeliness exception is to open the courthouse door to post-conviction petitioners and to afford them the opportunity to prove that they are actually

---

[100]     *Id.* at 1272.

[101]     200 A.3d 11 (Pa. 2019).

[102]     *Id.* at 29.

innocent or are serving illegal sentences.[103] The bar to open the door is not the same as the bar to obtain relief. Once the petitioner alleges and proves that there is a previously unknown fact upon which a claim is predicated and that that fact could not have been obtained earlier, the door to the courthouse opens and the petitioner has the opportunity to establish the elements of the underlying claim. Because Brown was denied a PCRA hearing, he has not had the opportunity to prove his claims as Section 9545(b)(1) requires. Brown is entitled to a hearing to prove his allegations. At such a hearing, a third-party confession may serve as the predicate fact upon which a claim is based for purposes of the newly discovered facts exception. And that confession is neither *per se* inadmissible hearsay nor inadequate to establish the newly discovered facts exception. Here, Brown alleged that he is able to establish the factual predicate of his underlying *Brady* claim through admissible evidence, thereby establishing the newly discovered facts timeliness exception. Brown is entitled to a hearing to prove these allegations.

## V. Admissibility of the Dorsett/Tusweet Smith statement

In Concurring and Dissenting Opinions, Justices Dougherty and Brobson would have us resolve whether a third-party confession can serve as a newly discovered fact under the PCRA, but would not address whether the Dorsett/Tusweet Smith statement, in particular, did so here. However, resolution of this underlying question is subsumed within the issue for which we granted allowance of appeal. Pa.R.A.P. 1115(a)(4) ("The statement of questions presented will be deemed to include every subsidiary question fairly comprised therein."). The PCRA court and the Superior Court both held that the third-party confession in this case, the Dorsett/Tusweet Smith statement, rested solely upon inadmissible hearsay because it was not admissible as a statement against interest, and, therefore, could not be a newly discovered fact under the PCRA. The lower courts'

---

[103]     42 Pa.C.S. § 9542.

rationale would apply broadly to any third-party confession that serves as a predicate fact under Section 9545(b)(2)(ii). To refute this rationale and resolve the issue before us, the Court needs to address why this predicate fact is not inadmissible hearsay.

Because the PCRA court denied an evidentiary hearing, Brown was never given the chance to prove the allegations that he made in his PCRA petition. In order to establish the timeliness exception, Brown must prove the "fact" upon which the claim is redicated—that Tusweet Smith confessed to Dorsett. Brown does not have to prove the truth of Tusweet Smith's confession. For purposes of the newly discovered facts exception, it does not matter whether Tusweet Smith, in fact, committed the murder. What matters is that Tusweet Smith told Dorsett that he committed the murder, and Dorsett provided a statement to that effect. Proof that Tusweet Smith made the statement is not proof of the truth of the statement. Because Brown will not be offering Tusweet Smith's confession for the truth of the matter asserted, it is far from clear that Tusweet Smith's confession is hearsay. Nevertheless, because the lower courts held that the Dorsett/Tusweet Smith statement was inadmissible hearsay as grounds to dismiss the PCRA petition, and the parties likewise engage that holding, we will confront this analysis.

In holding that Brown's factual predicate rested solely upon inadmissible hearsay, the lower courts overlooked the allegations in the petition indicating that Brown intends to present Dorsett and Tusweet Smith as witnesses in a PCRA hearing. Not only did Brown make allegations to this effect, he included witness certifications supporting these allegations.[104]

---

[104] The witness certification as to Tusweet Smith was signed not by Tusweet Smith but by counsel. *See* 42 Pa.C.S. § 9545(d)(1)(ii) (providing that, where a petitioner cannot obtain the signature of a witness, the petitioner can include a certification by counsel). A witness certification signed by counsel can suffice to raise a genuine issue of material fact.

Dorsett's testimony to the effect that he heard Tusweet Smith confess would not be hearsay. According to Brown, if he successfully calls Tusweet Smith to testify, Tusweet Smith's testimony would not be hearsay. If Tusweet Smith testifies and denies making the confession, then Brown would be able to impeach the witness with Dorsett's plea deal statement, which required Dorsett to provide truthful information to law enforcement. Brown also alleged that he could present the testimony of now-retired law enforcement officer Mike Warfield, who would testify that the Dorsett statement led to other successful prosecutions and proved truthful in multiple respects. If Tusweet Smith invoked the right against self-incrimination or otherwise refused to testify, Tusweet Smith would be an unavailable witness.[105] In that event, Tusweet Smith's statement would be admissible as a declaration against penal interest.

Although hearsay generally is not admissible,[106] several types of statements "are not excluded by the rule against hearsay if the declarant is unavailable as a witness[.]"[107] One such exception pertains to a statement against interest, which is defined as a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.[108]

---

[105] *See* Pa.R.E. 804(a) (defining when a declarant is considered unavailable).

[106] Pa.R.E. 802.

[107] Pa.R.E. 804(b)(3).

[108] *Id*. Although Brown argues that the requirement of trustworthiness does not apply to a statement introduced in a PCRA proceeding, we have never made such a holding. (continued…)

Brown has alleged corroborating circumstances that indicate the trustworthiness of the Dorsett/Tusweet Smith statement. Brown claims that he can present evidence that Tusweet Smith and Dorsett were close personal friends and that the two were incarcerated together in the Beaver County Jail. Brown offers information that appears to corroborate Tusweet Smith's confession, including: evidence that Tusweet Smith's brother was captured on tape discussing the murder weapon; that Tusweet Smith threatened to kill a police officer and had offered money to accomplish this threat; that a dog tracked the shooter toward Tusweet Smith's grandmother's house shortly after the shooting; that Tusweet Smith confessed to other individuals (including Zambory); and the discovery of ammunition for the type of gun used in the murder at Tusweet Smith's residence during the investigation. Brown also alleges that Dorsett's statement about Tusweet Smith's confession was made as part of Dorsett's federal plea deal whereby untruthfulness could have resulted in increased penalties in Dorsett's own case, as well as additional federal charges. All of this tends to corroborate the reliability of Tusweet Smith's confession and Dorsett's statement. As such, it is plainly evident that Brown's allegations underlying his invocation of the newly discovered facts exception do not rely exclusively upon inadmissible hearsay.

We agree with Brown that, under the lower courts' reasoning, little, if anything, contained in a PCRA petition could suffice to clear the hearsay threshold to establish the newly discovered facts exception. The purpose of a PCRA petition is to make allegations and to include supporting documentary evidence. By definition, assertions and documents and exhibits will invariably contain hearsay, unless they are a transcript of a

---

In fact, we routinely apply Rule 804(b)(3) to PCRA proceedings. *See, e.g., Commonwealth v. Collins*, 957 A.2d 237, 269 (Pa. 2008); *Commonwealth v. Ali,* 10 A.3d 282, 315 (Pa. 2010).

prior hearing. Nothing in the language of the PCRA imposes such an impossible hurdle to obtain post-conviction review.

The Commonwealth relies upon *Commonwealth v. Castro* as support for its argument that Brown intends to rely exclusively upon inadmissible hearsay.[109] In *Castro*, the defendant sought post-trial relief on an after-discovered evidence claim. The claim was premised upon a newspaper article about the corruption of a police officer that had been involved in the investigation into the defendant's criminal conduct. On appeal from the denial of the motion, this Court acknowledged that one of the requirements for a new trial due to after-discovered evidence is that "the proposed new evidence must be 'producible and admissible.'"[110] The Court held that a newspaper article is not itself evidence for purposes of an after-discovered evidence claim.[111] Rather, we held, the article was comprised of nothing but allegations. In order to obtain an evidentiary hearing on the motion, a movant would have to "describe the evidence that will be presented at the hearing" by identifying "actual testimony, physical evidence, documentation, or other type of evidence[.]"[112]

Because *Castro* was not a PCRA case, we did not confront the requirements of Section 9545(b)(1)(ii). Moreover, Brown, unlike Castro, has described the evidence that he will present at the PCRA hearing by identifying the witnesses he intends to call and the testimony he seeks to elicit. *Castro* is not analogous.

The Commonwealth argues that Brown waived the argument that Tusweet Smith's confession was admissible. This claim of waiver is refuted by the record. In the PCRA

---

[109] 93 A.3d 818 (Pa. 2014).

[110] *Id*. at 825 (quoting *Commonwealth v. Chamberlain*, 30 A.3d 381, 414 (Pa. 2011)).

[111] *Id*.

[112] *Id*. at 828.

petition, Brown averred that the confession could be admissible as a statement against interest depending upon whether Tusweet Smith testified or refused to testify. Brown also argued in response to the PCRA court's Rule 907 notice that Tusweet Smith's confession was not automatically hearsay, that it could be admissible, and that Brown was not required to establish corroborating circumstances under the relevant hearsay exception because PCRA proceedings are civil in nature.[113]

Brown has not yet had the opportunity to prove his claims with admissible evidence as Section 9545(b)(1) requires. Tusweet Smith has neither testified nor refused to testify. The PCRA court's dismissal on this basis was premature. This is not a case where there is no proof of the factual predicate, nor is Brown relying upon conjecture. Brown is entitled to a hearing on remand.

We reverse the order of the Superior Court and remand for further proceedings consistent with this opinion.

Chief Justice Todd and Justice Donohue join the opinion.

Justice Dougherty files a concurring and dissenting opinion in which Justice Mundy joins the dissenting portion.

Justice Brobson files a concurring and dissenting opinion and joins the opinion with the exception of Section V.

Justice Mundy files a dissenting opinion.

Justice McCaffery did not participate in the consideration or decision of this matter.

---

[113] Appellant's Brief, Appendix D (Response to Rule 907 Notice), at 8-9, n. 4.